**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DONALD SPORT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-1386-KMH |
| ) | |
| **CONTINENTAL WESTERN** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## **MEMORANDUM AND ORDER**

On March 21, 2006, the court conducted an evidentiary hearing related to plaintiff's motion for sanctions under Rule 37(c) (Doc. 97) and also heard argument on defendant's "objection" to Dr. Moskowitz's causation opinion (Doc. 98). Brad Pistotnik and Dustin DeVaughn appeared on behalf of the plaintiff and Marc Powell appeared on behalf of the defendant. For the reasons set forth below, plaintiff's motion shall be GRANTED and defendant's motion shall be DENIED. The following background provides necessary context for the motions.

**Background**

Highly summarized, this is an action to recover insurance benefits related to a January 2003 traffic accident which occurred while plaintiff was driving his employer's truck on K-96 Highway in Sedgwick County, Kansas. David Sheats, an uninsured motorist, was traveling in the same direction and drove his car into the back of plaintiff's dump truck.[1] Plaintiff contends that the accident injured his neck, lower back, and left leg and required multiple surgeries. Because Mr. Sheats was uninsured, plaintiff seeks "uninsured motorist" insurance benefits from the insurer of the truck, Continental Western Insurance Company.

Continental contends that the rear-end collision did not cause plaintiff's injuries and damages.[2] Specifically, Continental argues that plaintiff had pre-existing medical problems and "the rear end impact by the lighter vehicle merely resulted in a slight increase in the speed of [the] truck, if any, and could not have injured plaintiff's neck, back or knee." Defendant's Trial Brief, (Doc. 90, p. 1). Additional facts are contained in the court's analysis of the motions.

**Plaintiff's Motion for Sanctions**

Plaintiff moves for sanctions based on defendant's belated production of photographs taken by John Adams, Continental's claims adjuster. The chronology of events is critical in

---

[1] Mr. Sheats apparently fell asleep while driving.

[2] For purposes of this lawsuit, defendant agrees that Mr. Sheats was at fault and caused the accident.

the analysis and is set forth in detail below.

>Plaintiff timely served Continental with the following production request:
>
>Request No. 7:  **Any and all photographs** of the scene of the occurrence which is the subject matter of this lawsuit, of plaintiff's injuries, **of the vehicles** or objects involved or of any other object which may be relevant to the issues in this lawsuit.  It is intended that this request include any photographs **whether taken by or in the possession of defendant's insurance carrier, attorney, or himself.**  (Emphasis added).

Continental responded on **July 18, 2005** by producing a collection of 19 photographs taken by the Kansas Highway Patrol (KHP) shortly after the collision showing:  (1) the car wedged under the rear of plaintiff's truck, (2) the location of the car\truck on the side of the highway, and (3) portions of the highway where the collision occurred.[3]

Plaintiff also timely served an interrogatory asking Continental whether defendant had any pictures or photographs concerning the subject matter of the lawsuit and, if so, to provide information concerning the creation and location of such photographs.  Continental's corporate representative, John Adams, provided the following answer to the interrogatory on **July 18, 2005**:

>Yes, see Highway Patrol photos taken by Officer M. Scott on January 22, 2003, his diagram of the accident scene and witness statements attached to accident report.

Mr. Adams signed a verification, under oath, stating that he had read the interrogatories and

---

[3] The force of the collision caused the front hood section of Mr. Sheat's car to become stuck under the rear of plaintiff's truck.  When plaintiff pulled off the highway and onto the shoulder, the car remained wedged under the truck.  The vehicles were later separated; however, the KHP took no photographs of the vehicles after they were separated.

-3-

that the statements contained therein "are true and correct to the best of his knowledge and belief."

This matter was scheduled for jury trial commencing March 20, 2006. On February 28, plaintiff served a subpoena commanding Mr. Adams to appear at trial and to bring his entire investigation file concerning the accident. In the course of conferring with Mr. Adams concerning the trial subpoena, defense counsel determined that a collection of 24 photographs taken by Mr. Adams had not been disclosed to plaintiff.[4] The photographs were taken two days after the January 2003 accident and show detailed images of the damage to the rear of plaintiff's truck and the under-ride guard. Defendant produced the photographs on **March 13, 2006**, *seven days before trial*.

On March 15 plaintiff moved for sanctions under Rule 37(c), arguing that the belated disclosure of the pictures was highly prejudicial and that sanctions should be imposed. Defendant countered that the failure to produce the pictures was "due to an oversight" and, because Continental had "seasonably" amended its discovery response, sanctions under Rule 37(c) were inappropriate. Defendant also argued that the belated disclosure of evidence was not prejudicial.

A telephone conference concerning the motion was conducted on March 17, 2006. The parties renewed their arguments and plaintiff requested, at a minimum, that he be

---

[4] Plaintiff represents that Mr. Adams took 24 pictures. However, only 19 pictures were provided to the court in an e-mail attachment. The discrepancy is not material to the court's ruling.

-4-

permitted to add an expert rebuttal witness concerning the force required to twist the under-ride guard and to bend the truck's I-beam frame as reflected in the recently produced photos. Continental opposed the addition of a new witness without an opportunity to depose the expert and suggested that the case be continued thirty days. Plaintiff opposed a continuance because non-refundable fees and expenses had been incurred for the March 20 trial. Because the factual record was insufficient to rule on the motion for sanctions, the trial was continued to an unspecified date and an evidentiary hearing was conducted on March 21, 2006.

John Adams, Continental's designated corporate representative, testified at the March 21 hearing. He has been a claims adjuster for 18 years and trained to investigate vehicle accidents for insurers.[5] His normal practice and the practice in the industry is to inspect and photograph the damaged vehicle for use in evaluating insurance claims related to the accident. Consistent with that practice, Adams inspected the dump truck on January 24, 2003 (two days after the accident) and took detailed photographs from various angles of the damaged portion of the truck showing the twisted under-ride guard and torn I-beam. Copies of the pictures were stored (1) on a floppy disc retained in Continental's "paper" file and (2) in Continental's computer files. In addition, Adams made a contemporaneous entry on his computer diary for this particular insurance claim showing that he had taken photographs of the truck. Adams concedes that the photographs are important evidence in this case and highlight the damage caused to the dump truck.

---

[5] Adams has been employed by Continental for five years and carries the title of "senior claims representative." He has "adjusted" as many as 600 vehicles in some years.

Defendant attempts to excuse the belated disclosure of the photographs with Mr. Adams' vague explanation that he thought the photographs were "already in evidence." This testimony is not persuasive and is inconsistent with defendant's discovery responses. When answering plaintiff's interrogatory, Adams did not disclose the existence of the photographs taken by him. However, Adams concedes that (1) he took the photographs, (2) had the floppy disc in his file, (3) had a computer diary entry that photographs had been taken, and most importantly, (4) was aware of the photographs when he signed a "verification" of his interrogatory answer.[6] Regardless of any mistaken belief concerning the production of the photographs, Mr. Adams gave an interrogatory answer that was inaccurate and misleading. His failure to truthfully answer the interrogatory prevented plaintiff from discovering the existence of the photographs.

Defendant contends that sanctions are unnecessary because plaintiff was already aware of the damage to the dump truck even before Continental's photographs were produced. In support of this argument, defendant points to a KHP photograph showing that the truck's I-beam was damaged.[7] Defendant also notes that plaintiff asserted a Daubert challenge to defendant's expert witness based, in part, on the expert's lack of knowledge concerning damage to the truck. While it is true that plaintiff *believed* there was damage to

---

[6] Importantly, this is not a case where an individual forgot about or did not know of the existence of the photographs when answering the interrogatory.

[7] The KHP photograph was taken while the car was still wedged under the truck which obscured a significant portion of the under-ride guard. Now, with the benefit of the more detailed photographs, the KHP photograph is easier to interpret and understand.

the rear end of the dump truck, the trouble with defendant's line of reasoning is that defendant withheld the unequivocal photographic evidence of significant damage to the truck's I-beam and under-ride guard.  While the KHP photograph shows *some* type of damage to the back of the truck, the photographs taken by Adams show the damage with much better clarity and detail.  Moreover, although plaintiff was able to question Dr. Bain about damage to the truck, the questioning was limited because the only available KHP photograph lacked sufficient detail.

Defendant also argues that sanctions under Rule 37(c) are inappropriate because defendant supplemented or "seasonably amended" its discovery response.  Fed. R. Civ. P. 37(c) provides in pertinent part:

> **(c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.**
>
> (1) A party that **without substantial justification** fails to disclose information required by Rule 26(a) or 26(e)(1), **or to amend a prior response to discovery as required by Rule 26(e)(2)**, is not, **unless such failure is harmless**, permitted to use as evidence at trial, at a hearing, or on a motion any witness so disclosed. In addition to or in lieu of this sanction, the court on motion and after affording an opportunity to be heard, **may impose other appropriate sanctions.** In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (c) and may include informing the jury of the failure to make the disclosure.

(Emphasis added).   The dispute before the court concerns defendant's response to a production request and answer to an interrogatory; thus, the duty to amend is found in Rule 26(e)(2) which provides:

> (2) a party is under a duty seasonably to amend a prior response to an

> interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Defendant's suggestion that disclosure of the pictures seven days before trial establishes a safe haven from sanctions under Rule 37(c) is not persuasive. First, no evidence was presented at the hearing that defendant had amended its interrogatory answer. In addition to asking about the existence of pictures, plaintiff's interrogatory asked (1) the date, time and location the photographs were taken, (2) the name and address of the person taking the photographs, and (3) who had possession of the photographs. Complete answers to those questions were first provided at the time of Mr. Adam's testimony during the Rule 37 hearing. Presenting such evidence during the sanction hearing is a breach of defendant's duty to "seasonably" amend its interrogatory answer. Equally troubling is the implied argument that a party can knowingly give an inaccurate and misleading interrogatory answer and then avoid sanctions by merely providing updated disclosures seven days before the trial commences.

The court is not persuaded that defendant's belated disclosure of the photographs was timely as contemplated by Rule 26(e)(2). Accordingly, because defendant's failure was (1) "without substantial justification" and (2) not "harmless," sanctions are appropriate under Rule 37(c).

In addition to Rule 37(c), sanctions are also warranted under Fed. R. Civ. P. 26(g)(2) and (3) which provide, in relevant part:

> The **signature of an attorney or party** constitutes a certification that **to the best of the signer's knowledge**, information, and belief, **formed after a reasonable inquiry**, the request, response, or objection is:
>
> (A) **consistent with these rules** and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
>
> * * *
>
> (3) If without substantial justification a certification is made in violation of the rule, the court, upon motion or its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Mr. Adams knowingly provided an incorrect and misleading interrogatory answer under oath, a violation of the federal rules of civil procedure.[8]  Accordingly, sanctions are warranted under Rule 26(g).

In determining an appropriate sanction against the defendant the court takes into account:  (1) the costs and expenses imposed on plaintiff and his counsel in connection with this motion for sanctions and the trial continuance, (2) the prejudice caused by defendant's failure to disclose materially important photographs when originally requested, and (3) the need to deter defendant from engaging in similar conduct in the future.  At a minimum, defendant must reimburse plaintiff's counsel for (1) the non-refundable costs and expenses associated with witnesses and preparation for the canceled March 20 trial and (2) attorney

---

[8] See, e.g., Fed. R. Civ. P. 37(a)(3): "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Under Rule 37(d), the court "may make such orders ... as are just" if a party or corporate representative fails to answer interrogatories.

time and expenses associated with the motion for sanctions.[9] The parties shall confer concerning the amount of reimbursement and, if they are unable to agree, the court will schedule another evidentiary hearing to resolve the issue.

With respect to the issue of prejudice, the court is of the opinion that allowing plaintiff an opportunity to secure an additional expert witness is an appropriate remedy. The expert's opinion must be related to the evidence revealed by the recently disclosed photographs. Moreover, because of the prejudice to plaintiff in the preparation of his case, the reasonable costs and expenses associated with the new expert shall be borne by defendant.

Finally, with respect to the need to deter similar conduct by defendant in the future, the court will reserve consideration of that issue until the above fees and costs are reviewed and approved by the court.

**IT IS THEREFORE ORDERED** that plaintiff's motion for sanctions (**Doc. 97**) is **GRANTED**. The parties shall confer on the amount of fees and expenses set forth above and provide a report to the court by **April 7, 2006.** If the parties are unable to reach agreement, the court will conduct a second hearing at a future date. By **April 7, 2006**, plaintiff shall also notify the court and opposing counsel of his decision regarding the retention of an expert witness together with a proposed schedule for discovery related to that witness.

---

[9] Included within the trial preparation is a reasonable amount of attorney time preparing for trial that will necessarily be duplicated when the trial is rescheduled.

**Defendant's Objection to Dr. Moskowitz Causation Testimony**

On March 16, 2006, defendant filed an "objection" to Dr. Moskowitz's causation testimony. For the reasons set forth below, the "objection" shall be overruled.

Dr. Moskowitz is a treating physician (an orthopedic surgeon) who has provided care and treatment for defendant beginning in March 2005. Although the doctor has not been retained or specially employed to provide expert testimony in this case, plaintiff provided a March 21, 2005 report from Dr. Moskowitz expressing opinions on (1) the cause of plaintiff's medical problems, (2) a diagnosis and (3) a prognosis. After receipt of the report, defendant conducted a discovery deposition of the doctor in December 2005.

The scheduling order imposed a deadline "to file motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-05, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) or similar case law" which was extended to January 31, 2006. Scheduling Order, Doc. 13, p. 7 and Order, Doc. 52, p. 2). Defendant filed no motions concerning plaintiff's experts.[10]

On March 9, 2006, plaintiff took the video deposition of Dr. Moskowitz for trial purposes. Defense counsel expressed no objections to the doctor's opinion or otherwise placed plaintiff on notice that defendant intended to raise a Daubert challenge to Dr. Moskowitz's testimony or opinions.

Consistent with the schedule in this case, plaintiff designated those portions of Dr.

---

[10]

Plaintiff timely filed a motion challenging defendant's expert, Dr. Bain. After the matter was fully briefed, a Daubert hearing was conducted on March 8, 2006.

-11-

Moskowitz's deposition testimony for trial on March 14, 2006. On March 16, 2006 defendant filed an "objection" to Dr. Moskowitz's testimony concerning causation, arguing that his opinions violate Fed. R. Evid. 702 and Daubert.

Plaintiff argues that defendant's "objection" is untimely. The court agrees. Although styled as an "objection," the pleading is clearly a Daubert motion which was due January 31, 2006. The purpose of such a deadline is to allow sufficient time to conduct a Daubert or Rule 104 preliminary hearing before the trial commences so that the jury is not forced to waste its time while the court performs its "gatekeeper" function. Here, it appears that defendant adopted a strategy of "sandbagging" the plaintiff to gain a tactical advantage. The deadline in the scheduling order for filing challenges under Rule 702 and Daubert was instituted in this district to avoid precisely the type of gamesmanship raised by defendant's motion. The law does not reward ambush trial tactics and "the truth-seeking function of litigation is best served by an orderly progression." Alfred v. Caterpillar, Inc., 262 F.3d 1083, 1087 (10th Cir. 2001). Defendant offers no reason to modify the deadline established in the scheduling order; thus, the motion is untimely.

Even if it had been timely filed, the court would reject the motion. Treating physicians are generally permitted to express opinions concerning causation if related to their diagnosis and prognosis. The court is satisfied that Dr. Moskowitz's "causation" testimony is within the permissible bounds of his diagnosis, treatment, and prognosis.

**IT IS THEREFORE ORDERED** that plaintiff's motion (or objection) to strike certain testimony by Dr. Moskowitz **(Doc. 98)** is **DENIED.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 24th day of March 2006.

S/ Karen M. Humphreys

_____
KAREN M. HUMPHREYS
United States Magistrate Judge