**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DONALD SPORT,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**CONTINENTAL WESTERN** )<br>**INSURANCE COMPANY,** )<br>)<br>**Defendant.** )<br>_____ ) | Case No. 04-1386-KMH |

## MEMORANDUM AND ORDER

On May 18, 2006, the court conducted an evidentiary hearing to determine the amount of monetary sanctions for defendant's failure to timely produce material evidence (photographs) to plaintiff. Brad Pistotnik and Dustin DeVaughn appeared on behalf of the plaintiff and Marc Powell appeared on behalf of the defendant. The court's rulings are set forth below.

### Background

The circumstances leading to the imposition of sanctions are set forth in a prior opinion and will be repeated only as necessary for context. <u>Memorandum and Order</u>, Doc. 107, filed March 24, 2006. Highly summarized, defendant produced detailed photographs of damage to plaintiff's truck seven days before the jury trial was scheduled to commence.

The photographs are significant evidence and plaintiff moved for sanctions.[1]  Because of the serious nature of the issues raised in plaintiff's motion, the trial was continued to permit an opportunity for an evidentiary hearing to resolve disputed facts concerning the photographs and their belated production.

After reviewing various discovery responses and the testimony of defendant's claims adjuster, the court concluded that defendant knowingly provided misleading interrogatory answers and that monetary sanctions were in order.  Memorandum and Order, Doc. 107.  The parties were admonished that, at a minimum, defendant "must reimburse plaintiff's counsel for (1) the non-refundable costs and expenses associated with witnesses and preparation for the canceled trial and (2) attorney time and expenses associated with the motion for sanctions."  Id. at p. 9-10.  The court also allowed plaintiff an opportunity to secure an additional expert witness.[2]  Because of the prejudice to plaintiff in the preparation of his case, the court ordered that the reasonable costs and expenses associated with the new expert would be borne by defendant.  Id.

---

[1] The photographs were taken by defendant's adjuster two days after the accident and provide detailed evidence of the damage to the truck driven by plaintiff at the time of the accident.  Although plaintiff served particularized discovery concerning the existence of such photographs, defendant failed to disclose the photographs or acknowledge their existence until one week before trial.  Plaintiff requested sanctions in the form of (1) judgment against defendant, (2) a jury instruction highlighting defendant's discovery misconduct, and/or (3) monetary sanctions.

[2] The new expert was limited to expressing opinions concerning "the evidence revealed by the recently disclosed photographs."

The parties conferred but were unable to agree on an amount for monetary sanctions.[3] Accordingly, a second hearing was conducted on May 18 to determine the amount of monetary sanctions. The parties' arguments concerning the amount of sanctions are set forth in greater detail below.

## Attorney Fees

The standards for determining attorney fees are well established. To determine a reasonable award, the court calculates a 'lodestar' figure by multiplying the hours counsel reasonably spent on the motion for sanctions by a reasonable hourly rate. Case v. U.S.D. No. 233, 157 F.3d 1243 (10th Cir. 1998). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1201 (10th Cir. 1986)(quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). The fee applicant has "the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." Case at 1250. The court " is justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time." Id.

After the court has adequate time records, it must insure that the fee applicant has

---

[3] Plaintiff requested in excess of $35,000 in sanctions. Defendant argued that $5,000 was an appropriate sanction.

exercised "billing judgment." Id. Hours that an attorney would not properly bill to his or her client cannot be reasonably billed to the adverse party. Id. The court must also determine what is a reasonable time in which to perform the necessary tasks and whether there has been a "duplication of services."[4] The court may reduce the reasonable hours awarded if "the number [of compensable hours] claimed by counsel include[s] hours that were unnecessary, irrelevant and duplicative." Id. (quoting Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994).

With respect to hourly rates, the court generally determines an hourly rate award on what the evidence shows the market commands for analogous litigation. Case at 1255. If adequate evidence of the prevailing market rates is not provided, the court may use other relevant factors, including its own knowledge to establish the rate. Case at 1257. With these "lodestar" standards in mind, the court next examines the evidence presented by the parties.

**Rule 37 Sanction Motion**

Plaintiff requests attorney fees in the amount of $6,773.50 for time spent preparing and participating in his motion for sanctions. As explained in greater detail below, the amount requested shall be substantially reduced.

In support of his request, plaintiff submits an exhibit showing that Donald Snook spent 6.6 hours working on the motion. However, 2.1 hours were spent conferencing with

---

[4] For example, if two or three attorneys appear when one would suffice, compensation should be denied for the excess time. Id.

other attorneys representing plaintiff. The court declines to award fees for conferences among plaintiff's counsel and Mr. Snook's hours are reduced to 4.5 hours.

Dustin DeVaughn's records indicate that he spent 8.3 hours preparing for and participating in the Rule 37 hearing and another 2.5 hours preparing the itemization of costs and fees as ordered by the court. The court allows 10.8 hours for Mr. DeVaughn.

Plaintiff requests a similar amount of hours for Brad Pistotnik who also appeared on plaintiff's behalf at the Rule 37 hearing. The court denies this request because the participation by <u>one</u> attorney was sufficient for purposes of the Rule 37 motion and hearing.[5] The appearance of two attorneys was a "duplication of services" which the court declines to impose on defendant.

With respect to hourly rates, defendant expresses no objection to Mr. Snook's requested rate of $110 per hour and the rate shall be allowed without further comment. However, defendant objects to Mr. DeVaughn's requested rate of $200 per hour, arguing that there is insufficient evidence to support that amount and that a rate of $125 to $150 per hour is a more reasonable range for similar work within this legal community.

Mr. DeVaughn concedes that his normal billing rate is $110 to $120 dollars for insurance defense work but asserts that such a rate is based on (1) a volume discount granted to insurance companies and (2) the certainty that he will be paid in full. To support his claim

---

[5] The disallowance of Mr. Pistotnik's hours should not be construed in any manner as demeaning of his legal abilities or his participation in this case. Rather, in the context of sanctions, the court is simply unwilling to burden defendant with the appearance of more than one attorney at the sanction hearing.

-5-

for $200 per hour, Mr. DeVaughn proffers that his firm's billing records show that he has generated fees for his firm in 2005 and part of 2006 which, when divided by his work hours, show a return far in excess of $200 per hour.

The problem with this argument is that Mr. DeVaughn fails to provide evidence of a *market* hourly rate for an attorney with his legal experience and expertise.[6] At best, the only evidence of a *market* rate is his statement that he charges insurance companies from $110 to $120 per hour and defendant's concession that $125 to $150 per hour would be a reasonable hourly rate.

Because of the limited evidence concerning an hourly market rate, the court turns to its own knowledge of hourly rates in the market. Unfortunately, the rates for attorneys practicing before this court vary widely, ranging from a low around $100 per hour to a high at $250 to $350 per hour. Based on Mr. DeVaughn's experience, the court is persuaded that $150 per hour is a reasonable rate upon which to base a sanction award.

Multiplying Mr. Snook and Mr. DeVaughn's hour rates against the allowed reasonable hours gives a final total of $2,115 for attorney fees related to plaintiff's motion for sanctions and the related hearing.[7] Accordingly, the court awards attorney fees for

---

[6] Mr. DeVaughn devotes half of his practice to defense work and half to representing plaintiffs. Rather than showing a *market* rate, the accounting report from his firm merely shows that he had large recoveries as a plaintiff's lawyer in 2005 and early 2006.

[7] Mr. Snook:  4.5 hours x $110 = $495
Mr. DeVaughn: 10.8 hours x $150 = $1,620

for $200 per hour, Mr. DeVaughn proffers that his firm's billing records show that he has generated fees for his firm in 2005 and part of 2006 which, when divided by his work hours, show a return far in excess of $200 per hour.

The problem with this argument is that Mr. DeVaughn fails to provide evidence of a *market* hourly rate for an attorney with his legal experience and expertise.[6] At best, the only evidence of a *market* rate is his statement that he charges insurance companies from $110 to $120 per hour and defendant's concession that $125 to $150 per hour would be a reasonable hourly rate.

Because of the limited evidence concerning an hourly market rate, the court turns to its own knowledge of hourly rates in the market. Unfortunately, the rates for attorneys practicing before this court vary widely, ranging from a low around $100 per hour to a high at $250 to $350 per hour. Based on Mr. DeVaughn's experience, the court is persuaded that $150 per hour is a reasonable rate upon which to base a sanction award.

Multiplying Mr. Snook and Mr. DeVaughn's hour rates against the allowed reasonable hours gives a final total of $2,115 for attorney fees related to plaintiff's motion for sanctions and the related hearing.[7] Accordingly, the court awards attorney fees for

---

[6] Mr. DeVaughn devotes half of his practice to defense work and half to representing plaintiffs. Rather than showing a *market* rate, the accounting report from his firm merely shows that he had large recoveries as a plaintiff's lawyer in 2005 and early 2006.

[7] Mr. Snook:  4.5 hours x $110 = $495
Mr. DeVaughn: 10.8 hours x $150 = $1,620

plaintiff's motion and the sanction hearing in the amount of $2,115.

**Attorney Time for Trial Preparation**

Because defendant's belated disclosure of evidence caused the cancellation of the trial shortly before the trial was scheduled to commence, the court also allows a reasonable amount of attorney fees for trial preparation. Specifically, plaintiff's counsel were in the final stages of preparation when the trial was continued and counsel will of necessity be required to duplicate some of those trial preparations. Mr. DeVaughn requests 14.1 hours for reviewing medical records and exhibits and 14.2 hours for reviewing depositions. Mr. Pistotnik requests reimbursement for 27.5 hours of trial preparation.

The court is not persuaded that defendant should pay for 55.8 hours of trial preparation as requested by plaintiff's counsel. Contrary to plaintiff's suggestions, plaintiff's exhibit 1B does not show final trial preparations by Mr. Pistotnik that will be duplicated before trial commences.[8] Equally important, this is not a case that, because of its complexity or expected trial time, requires two attorneys. Because plaintiff's use of two attorneys is a "duplication of services" the court will limit sanctions to one attorney's time.

With respect to Mr. DeVaughn's requested hours, the time spent for reviewing depositions shall be reduced to 8 hours. While it is reasonable to assume that Mr. DeVaughn will need to refresh his memory concerning the depositions, the time to conduct such a

---

[8] In addition, Mr. Pistotnik fails to present "contemporaneous" time-keeper records of his hours.

review should be considerably less than 14 hours. Similarly, the time to refresh his memory concerning the exhibits and medical records will also be reduced to 8 hours. Multiplying the 16 hours by the allowed hourly rate results in an award of $2,400 for trial preparation time.

### Trial Expenses

Plaintiff requests $1,325 for cancellation fees paid to two expert witnesses (Dr. Terrell and Dr. Stein). The court is satisfied that the $1,325 cancellation fees are appropriate sanctions. Similarly, plaintiff requests $265.53 for process service for trial subpoenas that plaintiff will incur for the rescheduled trial. Because the process service fee will be duplicated, it shall be allowed as a sanction. However, plaintiff's request for $273 for witness fees is rejected. The record is simply unclear whether such checks have been cashed and/or will be duplicated. Accordingly, the court awards plaintiff a total of $1,590.53 for trial expense caused by the continuance.

### Additional Expert Witness

Plaintiff requests $15,000 for an additional expert witness as authorized by the court. In support of this request, plaintiff explains that he has located a bio-mechanical engineer in New Jersey who is willing to (1) inspect the photographs and vehicles, (2) examine plaintiff and his medical records, (3) write a report and (4) testify at trial for an estimated $15,000.[9]

---

[9] The cost is not fixed and may exceed $15,000.

Defendant objects to the amount of fees requested and also argues that the expert is far different from the metallurgist mentioned before this case was continued.

The court agrees that the expert now proposed by plaintiff is considerably different from the type discussed with the court in prior conferences. Based on counsel's prior comments, the court anticipated some type of metallurgical expert who would express an opinion concerning the force necessary to twist and tear the I-beam of plaintiff's truck and that such fees would be in the neighborhood of $1,000 to $3,000. The court declines to award $15,000 in expert witness fees. Rather, the court imposes a sanction of $3,000 as expert witness fees. Should he elect to do so, the plaintiff may utilize the bio-mechanical expert witness but defendant will not be required to pay the requested $15,000.

### Summary

The court awards sanctions for (1) attorney fees in the amount of $4,515, (2) trial expenses in the amount of $1,950.53, and (3) an expert witness fee of $3,000 for a total of $9,105.53.

**IT IS THEREFORE ORDERED** that sanctions are awarded in favor of the plaintiff and against defendant in the amount of $9,105.53. Defendant shall pay the money to plaintiff's counsel on or before **July 1, 2006.**

**IT IS FURTHER ORDERED** that plaintiff shall provide its Rule 26(a)(2) expert disclosure, if any, no later than **July 1, 2006.** Any relevant Daubert motion by defendant

shall be filed no later than **August 1, 2006.**

   **IT IS SO ORDERED.**

Dated at Wichita, Kansas this 25th day of May 2006.

                                        S/ Karen M. Humphreys
                                        _____
                                        KAREN M. HUMPHREYS
                                        United States Magistrate Judge